## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOANNA L. TOFT** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) **Civil Action No.** |
| | ) |
| | ) |
| | ) |
| **CUMBERLAND COUNTY, PA** | ) |
| **MICHAEL HALKIAS, INDIVIDUAL.** | ) |
| | |
| **Defendants.** | |

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Joanna L. Toft (hereinafter, "Plaintiff") moves the Court for entry of judgment in her favor against the named Defendants and in support of such Complaint avers as follows:

## PARTIES, JURISDICTION AND VENUE

1. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §1331 as this case arises under and pursuant to federal law specifically, the Americans with Disabilities Act (hereinafter, "ADA") and Title VII Gender-based claims (hereinafter, "Title VII"). Moreover, this Honorable Court has jurisdiction over Plaintiff's state law claims to the extent that she pleads them pursuant to 28 U.S.C. §1367.

2.     Venue lies within the Middle District of Pennsylvania pursuant to 28 U.S.C.
§1391(b) (2) as the facts and occurrences, acts and/or omissions, and incidents
and/or actions alleged herein took place within this judicial district.

3.     Plaintiff brings this action against her former employer, Cumberland County,
Pennsylvania, (hereinafter "CCPA" or "Defendant"). CCPA is principally located
at 1 Courthouse Square, Carlisle, Pennsylvania. The Public Defender's office she
worked in was in Suite 300 of the same location.

4.     Defendant Michael Halkias (hereinafter "Mr. Halkias" or "Defendant") is an
adult male and upon information and belief, residing within Cumberland County
in the Commonwealth of Pennsylvania. Mr. Halkias is employed as Chief Public
Defender of Cumberland County and was the Plaintiff's direct supervisor, was/is
in the supervisory line of succession relative to the Plaintiff and participated in
and exercised control over Plaintiff's work environment like scheduling,
timekeeping, rate of pay and oversight of Plaintiff's daily work activities and had
power to enforce discipline and/or to terminate employees including the Plaintiff.

5.     Plaintiff is an adult female who, at all relevant times hereto, resides in the
Commonwealth of Pennsylvania and having formerly worked at Cumberland
County as a Public Defender.

## UNDERLYING FACTS

6.    Plaintiff worked for Defendants as a Senior Assistant Public Defender from December 26, 2019, until the date of her termination on September 28, 2020, at an annual salary rate of $58,000.

7.    On or around January 2020, Plaintiff told Mr. Halkias that she suffered from seizures, migraines with aura and anxiety and was on prescribed medication for medical conditions.

8.    In or around March 2020, due to the COVID-19 pandemic, members from the Public Defender's (hereinafter "PD's") office began working from their home offices and would frequently conduct Zoom meetings where members could collaborate with one another.

9.    Thereafter, Plaintiff was exposed to a co-worker with COVID and had to quarantine for 2 weeks.

10.    Subsequently, during a March 2020 Zoom meeting, Mr. Halkias, announced to everyone that Christopher McCabe, male, non-disabled, (hereinafter "Mr. McCabe") would be returning to the PD's office (Mr. McCabe previously worked at the CCPA PD's office for 5 years).  Critically, at or near this time, Mr. Halkias, told Plaintiff that she was "lucky to have a job." At this time, Plaintiff was concerned that Mr. Halkias was targeting her for possible termination due to her health, or gender.

11.     Prior to returning employees to the PD's office, employees were informed to save 2-weeks sick time in case they might contract COVID-19 and need to be quarantined.

12.     On June 9, 2020, Plaintiff had a seizure and went to the Emergency room. The Plaintiff was given a written return date to work on June 12, 2020. She then gave a doctor's excuse to Mr. Halkias. (See Exhibit A). However, at no time was there an interaction or investigation regarding whether the Plaintiff required workplace accommodations despite her notice of the same.

13.     On July 2, 2020, Plaintiff called in sick with related symptoms to her prior notifications of disability with the County and she thereafter received an email from Mr. Halkias regarding the County's flex scheduling policy (See Exhibit B). However, again, at no time was there an interaction or investigation regarding whether the Plaintiff required workplace accommodations despite her notice of the same.

14.     On August 17, 2020, Plaintiff once again requested workplace accommodations due to her history of seizures and other neurological impairments, such as migraines. Additionally, Plaintiff notified her supervisor and Human Resources (hereinafter "HR") regarding anxiety and mental distress resulting from harassment incurring due to both her prior seizure activity and notice of the same. However, at no time was there a good faith interaction or

investigation regarding whether the Plaintiff required workplace accommodations despite her notice of the same.

15.    In Plaintiff's request for accommodations, she noted her history of seizures, neurological complications, and mental stress. Additionally, Plaintiff sought accommodations for frequent breaks for meals, stress relief and to use the restroom as needed (See Exhibit C). Once more, Plaintiff notified CCPA and Mr. Halkias that she would also require time away to treat for her conditions as more fully noted above. However, again, at no time was there an interaction or investigation regarding whether the Plaintiff required workplace accommodations despite her notice of the same.

16.    On September 15 & 16, 2020, Plaintiff called in sick due to a severe kidney infection caused by her not receiving adequate restroom breaks which she had formerly requested. This resulted in an infection.

17.    On September 21, 2020, Plaintiff requested a reasonable accommodation form from HR Tabitha Koons given that she was not receiving any good faith interaction regarding her prior accommodation requests and felt that she was being harassed about her health conditions given the fact that neither Mr. Halkias nor the County was taking her conditions seriously but rather chose to make light of them and act as though the accommodations she sought were trivial and unworthy of interaction.

18.    Thereafter, on September 24, 2020, Plaintiff received a Pre-Disciplinary Conference letter from Mr. Halkias stating his concerns with Plaintiff's job performance and unprofessional manner and scheduled a meeting for later that day with Mr. Halkias, Public Defender, Arla Waller, and HR Manager, Melinda Thompson.

19.    In that meeting they referred to Plaintiff often looking "frumpy" and not good enough, stating 'everyone else is up here (using hand signals) while you are down here." They told her you forget things and ask too many questions. They went on to say, "Danny Gray did all the work, and you ask too much from her as an intern." Further, they stated that her use of the term "druggies" to refer to certain inmates was unprofessional (although other non-disabled and/or male PD's frequently make sundry comments about clients which could be deemed unprofessional). Plaintiff explained that this was only said once to Mr. Halkias in private and referring to "druggies" as individuals who had not conducted violent crimes. Ms. Thompson, then angrily asked Plaintiff if she was accusing her superior, a senior prosecutor with years of experience, of lying about her use of the word? (See Exhibit D) Again, however, there was no discussion of any of Plaintiff requests for accommodations although she again had discussed in the meeting the health conditions she had been suffering from.

20.    On September 26, 2020, Plaintiff followed up with an email to Ms. Koons regarding her accommodation request for medical leave for the upcoming week due to additional care regarding prior medical requests, kidney treatment and a dental root canal (See Exhibit E).

21.    On September 28, 2020, Ms. Koons responded with needed paperwork and stated that time missed will be considered leave without approval and could potentially be considered as a time and attendance infraction and counted against you for disciplinary purposes (See Exhibit F). Again, no good faith effort was undertaken by the Defendants to engage in interaction about the Plaintiff's requests for accommodation.

22.    Feeling exasperated that no one was taking her medical issues and needed accommodations seriously, and furthermore that she was being harassed due to making such requests for workplace accommodations; and for reporting her belief that she was being forced out because she was a female; on September 29, 2020, Plaintiff received an email from Ms. Thompson of voluntary resignation in lieu of termination which would be effective September 28, 2020 (See Exhibit G). Thereafter, Plaintiff avers she was replaced with Mr. McCabe, male, non-disabled.

23.    The major life activities affected by Plaintiff's seizures, migraine condition, anxiety and other aforementioned disabilities includes concentrating, thinking,

communicating, working and at times seeing, due to aura activity during migraine flare-ups. Hence the need for workplace accommodations.

24.   Plaintiff avers that due to the threats, intimidation, public and private statements about her alleged, negative performance and the minimization of her requests for workplace accommodations and the failure to interact or accommodate, Plaintiff was forced from her position as a Public Defender. Consequently, she avers she was constructively discharged.

25.   Furthermore, Plaintiff avers that the Defendants hired a non-disabled male to replace her and then subsequently began undermining her position due to her protected class: female.

26.   Subsequently, Plaintiff dually filed claims with the Equal Employment Opportunity Commission (hereinafter "EEOC") and the Pennsylvania Human Relations Commission (hereinafter "PHRA") on or about March 24, 2021, under a work-sharing agreement in which the EEOC investigated the claims and ultimately concluded that they would not proceed with the claims, providing a right to sue letter for both the EEOC and PHRA claims on June 21, 2021. This fully exhausted the Plaintiff's administrative claims at the agencies, see attached as Exhibit H.

27.     Plaintiffs avers her claims fall under a continuing violation theory to the extent

necessary to preserve her claims falling beyond any statutory limitations period

proscribed as factually averred herein.

28.     Further, the CCPA is responsible/liable for the actions of its agents under a

theory of *Respondeat Superior.*

## COUNT 1
## ADA – DISCRIMINATION
### *CCPA ONLY*

29.     Plaintiff incorporates herein the previous averments as if fully set forth.

30.     The ADA prohibits discrimination in the workplace against employees who

have, *inter alia*, given notice of disabilities to an employer or sought

accommodations in the workplace.

31.     In 2020, Plaintiff notified CCPA and Mr. Halkias that she suffered from

seizures, migraines with aura and anxiety and was on prescribed medication for

medical conditions. Further, that she required medical leave and/or workplace

accommodations.

32.     Plaintiff's conditions impact the major life activities of concentrating, thinking,

communicating, working and at times seeing due to aura activity.

33.      Plaintiff has a documented history or record of seizures, migraines with aura

and anxiety.

34.    Further, regarded Plaintiff as being disabled when they disciplined and terminated her employment because of her impairment (failure to accommodate, provide medical leave, disciplined due to her need for and use of time off to treat her impairments) or based upon an impairment the Defendant perceived she had.

35.    As a result, the Plaintiff avers that she was discriminated against her on account of her disabilities.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the ADA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs.

**COUNT 2**
**ADA -HOSTILE WORK ENVIRONMENT**
*CCPA ONLY*

36.    Plaintiff incorporates herein the previous averments as if fully set forth.

37.    The Plaintiff avers that she is a qualified individual with a disability under the ADA due to the fact that she suffers from seizures, migraines with aura and anxiety and was on prescribed medication for medical conditions, and notice of the same. Additionally, the Plaintiff has been under a physician's care for her disabilities since she was diagnosed.

38.   The Plaintiff was subject to unwelcomed harassment after she sought disability accommodations and after her reports of a hostile work environment as more fully noted above in 2020.

39.   Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment as more fully noted above because the Plaintiff was forced to work when she was experiencing symptoms of her medical conditions, was not offered medical leave or notice of the same, was disciplined immediately after seeking accommodations and for notice of the same and was bullied, intimidated and mistreated during disciplinary meetings which were conducted in close temporal proximity to the time she gave notice of her need for leave and the harassment that followed the same.

40.   Defendants knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action against the Plaintiff, further disciplining, and berating her due to her conditions even making light of her inability to think and communicate during hearings.

41.   The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability for her claims.

42.   As a result of all of the above, the Plaintiff avers that CCPA created a hostile working environment for her and forced her from her job in close temporal

proximity to her notice of and request for medical leave and workplace accommodations.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the ADA and any other applicable statutory remedies including but not limited to: monetary relief for the plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs.

## COUNT 3
## ADA - RETALIATION
### *CCPA ONLY*

43.     Plaintiff incorporates herein the previous averments as if fully set forth.

44.     The ADA prohibits retaliation in the workplace against employees who have, inter alia, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

45.     The Plaintiff's requests for an accommodation in the workplace and notice of harassment constituted "protected activity" pursuant to state and federal law.

46.     Defendant retaliated against the Plaintiff on account of her protected activity when it disciplined her after he sought medical leave and workplace accommodations related to her disability and after she opposed the harassment and bullying.

47.   Furthermore, Plaintiff avers that the Defendant's purported basis to discipline her (e.g., performance deficiencies, unprofessional manner) is false and erroneous and a pretext for underlying invidious reasons.

48.   As a result, the Plaintiff avers that the Defendant retaliated against her on account of her protected activity by imposing unjustified discipline and forcing her from her job without justification.

WHEREFORE, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to ADA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 4
## PHRA – DISABILITY DISCRIMINATION
### *CCPA AND INDIVIDUAL DEFENDANT*

49.   Plaintiff incorporates herein the previous averments as if fully set forth.

50.   The PHRA prohibits discrimination in the workplace against employees who have, *inter alia*, given notice of disabilities to an employer or sought accommodations in the workplace.

51.   In 2020, Plaintiff notified CCPA and Mr. Halkias that she suffered from seizures, migraines with aura and anxiety and was on prescribed medication for

medical conditions. Further, that she required medical leave and/or workplace accommodations.

52.   Plaintiff's conditions impact the major life activities of concentrating, thinking, communicating, working and at times seeing due to aura activity.

53.    Plaintiff has a documented history or record of seizures, migraines with aura and anxiety.

54.   Further, regarded Plaintiff as being disabled when they disciplined and terminated her employment because of her impairment (failure to accommodate, provide medical leave, disciplined due to her need for and use of time off to treat her impairments) or based upon an impairment the Defendant perceived she had.

55.    As a result, the Plaintiff avers that she was discriminated against her on account of her disabilities.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs.

## COUNT 5
## PHRA -DISABILITY HOSTILE WORK ENVIRONMENT
### *CCPA AND INDIVIDUAL DEFENDANT*

56.   Plaintiff incorporates herein the previous averments as if fully set forth.

57.    The Plaintiff avers that she is a qualified individual with a disability under the PHRA due to the fact that she suffers from seizures, migraines with aura and anxiety and was on prescribed medication for medical conditions, and notice of the same. Additionally, the Plaintiff has been under a physician's care for her disabilities since she was diagnosed.

58.    The Plaintiff was subject to unwelcomed harassment after she sought disability accommodations and after her reports of a hostile work environment as more fully noted above in 2020.

59.    Further, the harassment was sufficiently severe or pervasive as to alter the conditions of Plaintiff's employment and to create an abusive and hostile working environment as more fully noted above because the Plaintiff was forced to work when she was experiencing symptoms of her medical conditions, was not offered medical leave or notice of the same, was disciplined immediately after seeking accommodations and for notice of the same and was bullied, intimidated and mistreated during disciplinary meetings which were conducted in close temporal proximity to the time she gave notice of her need for leave and the harassment that followed the same.

60.    Defendants knew, or reasonably should have known of the harassment, and failed to take prompt, effective remedial action, instead taking adverse action

against the Plaintiff, further disciplining, and berating her due to her conditions even making light of her inability to think and communicate during hearings.

61.   The fact that the Plaintiff's supervisor was a perpetrator of the harassment and discrimination entitles the Plaintiff to strict liability for her claims.

62.   As a result of all of the above, the Plaintiff avers that CCPA created a hostile working environment for her and forced her from her job in close temporal proximity to her notice of and request for medical leave and workplace accommodations.

**WHEREFORE**, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to the PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs.

**COUNT 6**
**PHRA -DISABILITY BASED RETALIATION**
***CCPA AND INDIVIDUAL DEFENDANT***

63.   Plaintiff incorporates herein the previous averments as if fully set forth.

64.   The PHRA prohibits retaliation in the workplace against employees who have, inter alia, sought assistance for an accommodation in the workplace or to have otherwise opposed practices made unlawful under the law.

65.   The Plaintiff's requests for an accommodation in the workplace and notice of harassment constituted "protected activity" pursuant to state and federal law.

66.    Defendant retaliated against the Plaintiff on account of her protected activity when it disciplined her after he sought medical leave and workplace accommodations related to her disability and after she opposed the harassment and bullying.

67.    Furthermore, Plaintiff avers that the Defendant's purported basis to discipline her (e.g., performance deficiencies, unprofessional manner) is false and erroneous and a pretext for underlying invidious reasons.

68.    As a result, the Plaintiff avers that the Defendant retaliated against her on account of her protected activity by imposing unjustified discipline and forcing her from her job without justification.

WHEREFORE, Plaintiff prays that this Honorable Court will order all appropriate relief pursuant to PHRA and any other applicable statutory remedies including but not limited to: monetary relief for the Plaintiff, including as applicable compensatory damages including wage loss, pain and suffering and all reasonable attorney's fees and costs of litigation.

## COUNT 7
## VIOLATION OF TITLE VII
## GENDER DISCRIMINATION
### *CCPA ONLY*

69.    Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

70.    By the conduct described above, Defendant intentionally deprived the Plaintiff of the same rights as are enjoyed by males in violation of Title VII of

the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 when it disciplined and fired the plaintiff.

71. Further, by allowing male workers to retain their positions and not be disciplined or terminated as was the Plaintiff.

72. Furthermore, by replacing Plaintiff with Mr. McCabe, male, non-disabled.

73. Further, to permit the continuing use of derogatory and harassing comments by co-workers and supervisors thus permitting a hostile work environment to fester and continue while she was employed.

74. Further, to permit retaliatory conduct such as discipline and termination after Plaintiff reported the harassment.

75. As a result of Defendants' actions in violation of Title VII, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to equitable monetary relief; and she has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions or inaction, thereby entitling her to compensatory damages.

76. Further Defendant intentionally discriminated against Plaintiff due to her status: female.

77. To remedy the violations of the rights of the Plaintiff secured by Title VII, Plaintiff requests that the Court award Plaintiff the relief prayed for below.

**COUNT 8**
**TITLE VII/GENDER**
**HOSTILE WORK ENVIRONMENT**
*CCPA ONLY*

78. Plaintiff incorporates all forgoing paragraphs as though fully set forth.

79. Plaintiff was subjected to unlawful harassment by a male supervisor at work as more fully described above.

80. Plaintiff never welcomed such harassment.

81. Defendants' conduct was motivated by Plaintiff's gender (female).

82. The Plaintiff was replaced by Mr. McCabe, male, non-disabled.

83. The conduct of Defendant and its agents was severe or pervasive such that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

84. Plaintiff believed her environment at work to be hostile or abusive because of the conduct of the Defendant and its agents as more fully described above.

85. Plaintiff suffered a tangible employment action, as more fully described above, when she was disciplined and terminated and due to the hostile work environment, which Defendants permitted to continue unabated.

86. To remedy the violations of the rights of the Plaintiff secured by Title VII Plaintiff requests that the Court award him the relief prayed for below.

## COUNT 9
## VIOLATION OF TITLE VII/GENDER
## RETALIATION
### *CCPA ONLY*

87. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

88. Plaintiff reported the harassment of her supervisors as more fully described above.

89. Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 prohibits retaliation against one who is engaged in protected activity including reporting harassment in the workplace.

90. Plaintiff engaged in protected activity (i.e., as more fully noted above, reporting harassment due to her protected status; attempt to replace her with Mr. McCabe) in 2020 when she went to supervisors and upper-level management with her reports of the same.

91. There was a causal connection between the reporting of the harassment and unwarranted discipline and her subsequent termination.

92. If not for Plaintiff's engaging in protected activity Defendant would not have taken action to deprive her of her job through unwarranted discipline and would not have fired her.

93. As a result of Defendants' actions in violation of Title VII, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has

suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions or inaction, thereby entitling her to compensatory damages.

94. Further, Defendants intentionally retaliated against the Plaintiff as more fully described above due to her protected status: female.

95. To remedy the violations of the rights of the Plaintiff secured by Title VII, Plaintiff requests that the Court award her the relief prayed for below.

**COUNT 10**
**VIOLATION OF PHRA**
**GENDER DISCRIMINATION**
***CCPA AND INDIVIDUAL DEFENDANT***

96. Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

97. By the conduct described above, Defendants intentionally deprived the Plaintiff of the same rights as are enjoyed by females in violation of the PHRA when it disciplined and fired the Plaintiff.

98. Further, by allowing male workers to retain their positions and not be disciplined or terminated as was the Plaintiff.

99. Further, to permit the continuing use of derogatory and harassing comments by co-workers and supervisors thus permitting a hostile work environment to fester and continue while she was employed.

100. Further, to permit retaliatory conduct such as discipline and termination after Plaintiff reported the harassment.

101.   As a result of Defendants' actions in violation of the PHRA, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions or inaction, thereby entitling her to compensatory damages.

102.   Further Defendants intentionally discriminated against Plaintiff due to her status: female.

103.    To remedy the violations of the rights of the Plaintiff secured by the PHRA, Plaintiff requests that the Court award Plaintiff the relief prayed for below.

**COUNT 11**
**PHRA/GENDER**
**HOSTILE WORK ENVIRONMENT**
*CCPA AND INIDVIDUAL DEFENDANT*

104.   Plaintiff incorporates all forgoing paragraphs as though fully set forth.

105.   Plaintiff was subjected to unlawful harassment by a male supervisor at work as more fully described above.

106.   Plaintiff never welcomed such harassment.

107.   Defendants' conduct was motivated by Plaintiff's gender (female).

108.   The conduct of Defendants and its agents was severe or pervasive such that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

109.   Plaintiff believed his environment at work to be hostile or abusive because of the conduct of the Defendants and its agents as more fully described above.

110.   Plaintiff suffered a tangible employment action, as more fully described above, when she was disciplined and terminated and due to the hostile work environment, which Defendants permitted to continue unabated.

111.   To remedy the violations of the rights of the Plaintiff secured by the PHRA Plaintiff requests that the Court award him the relief prayed for below.

**COUNT 12**
**VIOLATION OF PHRA/GENDER**
**RETALIATION**
*CCPA AND INDIVIDUAL DEFENDANT*

112.   Plaintiff hereby repeats all preceding paragraphs as though fully set forth.

113.   Plaintiff reported the harassment of her supervisors as more fully described above.

114.   The PHRA prohibits retaliation against one who is engaged in protected activity including reporting harassment in the workplace.

115.   Plaintiff engaged in protected activity (i.e., as more fully noted above, reporting harassment due to her protected status; attempt to replace her with Mr.

McCabe) in 2020 when he went to supervisors and upper-level management with his reports of the same.

116.   There was a causal connection between the reporting of the harassment and unwarranted discipline and her subsequent termination.

117.   If not for Plaintiff's engaging in protected activity Defendants would not have taken action to deprive her of her job through unwarranted discipline and would not have fired her.

118.   As a result of Defendants' actions in violation of the PHRA, the Plaintiff has been denied employment opportunities providing substantial compensation and benefits, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of Defendants' actions or inaction, thereby entitling her to compensatory damages.

119.   Further, Defendants intentionally retaliated against the Plaintiff as more fully described above due to her protected status: female.

120.   To remedy the violations of the rights of the Plaintiff secured by the PHRA, Plaintiff requests that the Court award him the relief prayed for below.

**PRAYER FOR RELIEF**

**WHEREFORE**, the Plaintiff prays that the Court grant relief on her Causes of Action as specified below.

121.   The Plaintiff prays that the Court award monetary relief as follows:

122.    On her Causes of Action, order Defendants to pay equitable monetary relief and compensatory damages to the Plaintiff as are asserted under the ADA and/or PHRA, as applicable, and in an amount to be proven at trial.

123.    The Plaintiff prays that the Court award her costs, expenses, and attorneys' fees, payable by CCPA and the individual defendants as to the statutory counts, as applicable and as follows:

124.    By determining that the Plaintiff is a prevailing party on her Causes of Action and thereupon awarding the Plaintiff her reasonable costs, expenses, and attorneys' fees incurred in bringing this action under applicable statutory language.

125.   The Plaintiff prays that the Court award further monetary relief as follows:

126.    The Plaintiff prays that the Court order to pay pre- and post-judgment interest in all monetary amounts awarded in this action, as provided by law.

127.    The Plaintiff prays that the Court retain jurisdiction of this case for a sufficient period of time to assure that has fully complied with remedies proscribed.

128.   The Plaintiff prays that the Court award all appropriate pain, suffering, humiliation damages and punitive relief (if and where applicable) under her causes of action.

129.   The Plaintiff prays that the Court award such other and further relief as this

Court deems equitable and just.


Dated:        August 12, 2021                    Respectfully submitted,

DONHAM LAW

*By: /s/ Jeremy A. Donham, Esquire*
Jeremy Donham, Esquire
Attorney I.D. No. 206980
PO Box 487, Dellslow, WV 26531
717.881.7855 (ph) 888.370.5177 (fax)